UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:21-cv-06817-CAS-GJSx | Date | May 23, 2022 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Carl Jensen et al | | |

Present: The Honorable  **CHRISTINA A. SNYDER**

| Catherine Jeang | Laura Elias | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:
Kathryn Wanner
Todd Brillian

Attorneys Present for Defendants:
Not Present

**Proceedings:**  MOTION FOR DEFAULT JUDGMENT (Dkt. 40, filed on April 15, 2022)

## I.   INTRODUCTION AND BACKGROUND

On August 24, 2021, the Securities and Exchange Commission ("SEC") filed this action against Carl Jensen and Stephen W. Gold as defendants and Kerry Margolis and Michael Hock as relief defendants. Dkt. 1 ("Compl."). The SEC's complaint brings three claims for relief: (1) Fraud in Connection with the Purchase and Sale of Securities, in violation of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5(b) (against defendant Jensen); (2) Fraud in the Offer or Sale of Securities, in violation of Section 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77(q)(a) (against defendant Jensen); and (3) Aiding and Abetting Violations of Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5 thereunder (against defendant Gold). Id. ¶¶ 89-103. Defendant Jensen is a Canadian citizen who likely resides in Australia, though his exact physical location is unknown. Id. ¶ 14; Dkt. 10 at 2. Defendant Gold is a citizen of Great Britain currently residing in Tarzana, California. Compl. ¶ 15. Relief defendant Margolis is an American citizen who likely resides in Costa Rica, though his exact physical location is unknown. Id. ¶¶ 16; Dkt. 10 at 2. Relief defendant Hock is an American citizen currently residing in Sausalito, California. Compl. ¶ 17.

The SEC's complaint alleges that Jensen orchestrated an ongoing fraud through the offer and sale of securities in the form of promissory notes with purported returns "from what [Jensen] represents is a portfolio of investments, including Chinese pre-World War II railroad bonds, . . . and Mexican gold bonds (also pre-World War II era)." Id. ¶ 18.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:21-cv-06817-CAS-GJSx | Date | May 23, 2022 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Carl Jensen et al | | |

Through this scheme, Jensen raised over $7 million from more than 75 investors. Id. ¶ 4. Rather than receiving money in his own name, Jensen directed investors to send their funds to accounts in the names of defendants Gold, Margolis, and Hock. Id. ¶ 7. The complaint alleges that the majority of the money raised has been spent on purposes unrelated to Jensen's purported investment portfolio. Id. ¶ 8. The SEC seeks findings that defendants committed the violations alleged in the complaint, permanent injunctions enjoining defendants Jensen and Gold from violating Section 10(b) of the Exchange Act and Rule 10b-5 thereunder and Section 17(a) of the Securities Act, disgorgement with prejudgment interest, and civil monetary penalties. Id. ¶ 13.

On September 24, 2021, the SEC moved for alternate service pursuant to Federal Rule of Civil Procedure 4(f)(3) ("Rule 4(f)(3)") against defendant Jensen and defendant Margolis, stating that it "has been unable to serve [them] with the summons and the complaint . . . given that their physical whereabouts are unknown." Dkt. 10 at 2. Accordingly, the SEC's motion "[sought] an order from this Court permitting it to serve Jensen and Margolis by both email and by publication." Id. On October 25, 2021, the Court granted the SEC's motion for authorization to serve Jensen and Margolis by email and publication pursuant to Rule 4(f)(3). Dkt. 19.

On November 19, 2021, the clerk entered default against Gold. Dkt. 26. On February 3, 2022, the clerk entered default against Jensen and Margolis. Dkt. 34.

On April 15, 2021, the SEC moved for default judgment against defendants Jensen, Gold, and Margolis. Dkt. 40-1 ("Mot.").[1] Pursuant to its motion, the SEC requests the Court issue an order:

> "(1) permanently enjoining Jensen and Gold from future violations of the antifraud provisions of Section 17(a) of the [Securities Act] [15 U.S.C. §77q(a)] and Section 10(b) of the [Exchange Act] [15 U.S.C. § 78o(a)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5(a)-(c)];

---

[1] On April 15, 2022, the SEC submitted a stipulation in which relief defendant Hock consented to disgorge the amount he received, $35,200, plus prejudgment interest of $444.2. Dkt. 39. Accordingly, on April 19, 2022, the Court entered final judgement against Hock for a total of $35,644.21. Dkt. 42.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:21-cv-06817-CAS-GJSx | Date | May 23, 2022 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Carl Jensen et al | | |

(2) ordering disgorgement of the amounts each defaulted defendant or relief defendant received, with prejudgment interest, as follows:

(a) for defendant Jensen, disgorgement with prejudgment interest of the following amounts: (i) $125,400 that he directly received with prejudgment interest of $2,301.32; (ii) $362,897, jointly and severally with Gold for the amount Gold personally retained from the amounts he received from investors, with prejudgment interest of $6,659.84; and (iii) $4,080,596, jointly and severally with Margolis for the amount Margolis retained from investors, with prejudgment interest of $74,886.58, for a total of $4,568,893 in disgorgement, plus prejudgment interest of $83,846.74;

(b) for defendant Gold, disgorgement of $362,897 with prejudgment interest of $6,659.84 jointly and severally with Jensen, and;

(c) for relief defendant Margolis, disgorgement of $4,080,596 with prejudgment interest of $74,886.58, jointly and severally with Jensen;

and (3) imposing a civil penalty of $4,568,983 against defendant Jensen and a civil penalty of $362,897 against defendant Gold to match each defendants' disgorgement."

Mot. at 10-11. The Court held a hearing on May 23, 2022. Jensen, Gold, and Margolis did not appear. Having carefully considered the SEC's arguments and submissions, the Court finds and concludes as follows.

## II. BACKGROUND

The SEC's complaint alleges that from at least March 2015 through the summer of 2021, Jensen raised more than $7 million from at least 65 investors in the form of promissory notes. Compl. ¶ 4. Jensen found investors in the United States and overseas principally through his contacts in the alternative medicine field, and their friends and family. Id. ¶¶ 5, 32.

Jensen represented that he owned a portfolio of investments, including Chinese pre-World War II railroad bonds and Mexican gold bonds (also pre-World War II era). Id. ¶ 18. Investors understood that Jensen would generate investment profits through the sale of investments, including the international bearer bonds from his purported portfolio of investments. Id. ¶ 22. Jensen repeatedly represented to investors that they would

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      'O'

| Case No. | 2:21-cv-06817-CAS-GJSx | Date | May 23, 2022 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Carl Jensen et al | | |

receive profits of between 10 to 100 times their principal in anywhere between a week and thirty days. Id. ¶ 41.

Jensen directed investors to wire money to Gold, Margolis and Hock. Id. ¶¶ 26, 27. Jensen told investors that Gold, Margolis, and Hock were associates of his who assist with his investment portfolio. Id. ¶ 24. Once received, investors' monies were pooled in accounts in the names of Gold, Hock, and Margolis. Id. ¶ 28. There is no evidence that any investments or assets held or controlled by defendants or relief defendants could generate the promised investor returns on the promissory notes. Id. ¶¶ 40, 42.

Between January 2015, through April 2021, at least $8,791,692 was deposited into the bank accounts of the defendants and relief defendants. Dkt. 40-2 (Declaration of SEC staff accountant Deborah Russell ("Russell Decl.")) ¶ 29. Of this amount, $5,874,758 (67%) was received from individuals identified as investors; $1,538,834 (17%) was received from individuals and entities with unknown relationships to the defendants; $175,232 (2%) was withdrawn from a brokerage account; $595,357 (7%) was deposits from unidentified sources; $50,688 (1%) was received from related individuals; and $556,823 (6%) was from miscellaneous other sources such as loan proceeds, employment income, and refunds. Id.

Relying on the declaration of SEC staff accountant Russell, the SEC submits that "at least $4.5 million was used by Jensen, Gold, Margolis and Hock to purchase goods for themselves, pay for their personal bills, or pay relatives and individuals who are likely other Jensen associates." Mot at 12-13. This includes at least at least $4,080,596 of investor funds misappropriated by Margolis and at least $362,897 of investor funds misappropriated by Gold. Russell Decl. ¶ 38.

### III. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 55, when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and the plaintiff does not seek a sum certain, the plaintiff must apply to the court for a default judgment. Fed. R. Civ. P. 55.

As a general rule, cases should be decided on the merits as opposed to by default, and, therefore, "any doubts as to the propriety of a default are usually resolved against the party seeking a default judgment." Judge Virginia A. Phillips et al., Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial Ch. 6-A ¶ 6:11 (2021 ed.) (citing Pena v. Seguros La

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          'O'

| Case No. | 2:21-cv-06817-CAS-GJSx | Date | May 23, 2022 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Carl Jensen et al | | |

Comercial, S.A., 770 F.2d 811, 814 (9th Cir. 1985)). Granting or denying a motion for default judgment is a matter within the court's discretion. Elektra Entm't Grp., Inc. v. Crawford, 226 F.R.D. 388, 392 (C.D. Cal. 2005); see also Sony Music Ent. Inc. v. Elias, No. CV03-6387DT(RCX), 2004 WL 141959, at *3 (C.D. Cal. Jan. 20, 2004).

The Ninth Circuit has directed that courts consider the following factors in deciding whether to enter default judgment: (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning the material facts; (6) whether defendant's default was the product of excusable neglect; and (7) the strong policy favoring decisions on the merits. See Eitel v. McCool, 782 F.2d 1470, 1471–72 (9th Cir. 1986); see also Elektra, 226 F.R.D. at 392.

"Before a court can enter a default judgment against a defendant, the plaintiff must satisfy the procedural requirements set forth in Federal Rules of Civil Procedure 54(c) and 55, as well as Local Rule 55-1 and 55-2." Harman Int'l Indus., Inc. v. Pro Sound Gear, Inc., No. 2:17-cv-06650-ODW-FFM, 2018 WL 1989518, at *1 (C.D. Cal. Apr. 24, 2018). Accordingly, when an applicant seeks a default judgment from the Court, the movant must submit a declaration specifying: "(a) When and against what party the default was entered; (b) The identification of the pleading to which default was entered; (c) Whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator or other representative; (d) That the Servicemembers Civil Relief Act (50 U.S.C. App. § 521) does not apply; and (e) That notice has been served on the defaulting party, if required by [Federal Rule of Civil Procedure] 55(b)(2)." See C.D. Cal. L.R. 55-1. Under Local Rule 55-2, "where an application for default judgment seeks unliquidated damages, the party seeking entry of the default judgment is obligated to serve notice of the application on the defaulting party regardless of whether the latter has appeared in the action." Halicki v. Monfort, No. 2:08-cv-00351-PSG-JTL, 2009 WL 10672966, at *2 (C.D. Cal. Nov. 19, 2009) (citing C.D. Cal. L.R. 55-2).

## IV.   DISCUSSION

### A.   Procedural Requirements

To satisfy the procedural requirements for entry of default judgment, the plaintiff must follow the "requirements set forth in Federal Rules of Civil Procedure 54(c) and 55,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:21-cv-06817-CAS-GJSx | Date | May 23, 2022 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Carl Jensen et al | | |

as well as Local Rule 55-1 and 55-2." Harman Int'l Indus., 2018 WL 1989518, at *1. Here, the procedural requirements for default judgment are satisfied because (1) the SEC served Jensen, Gold, and Margolis with the summons and complaint; (2) the clerk entered default against Jensen, Gold, and Margolis for failure to respond to the complaint; and (3) the SEC submitted a declaration establishing that Jensen, Gold, and Margolis are not infants, are not incompetent persons, and are not in military service, meaning that the Servicemembers Civil Relief Act does not apply. See Dkt. 40-3 (Declaration of SEC's counsel Todd Brilliant ("Brilliant Decl.")) ¶¶ 5-7. Additionally, the SEC has provided notice of this motion to Gold, and will provide Jensen and Margolis courtesy copies of this motion and the requested relief via email, in accordance with the means of alternative service previously authorized by this Court. See Mot. at 21.

Accordingly, the government has satisfied the procedural requirements for default judgment under the Federal and Local Rules. The Court now proceeds the merits of the government's motion for default judgment.

**B.    Application of the Eitel Factors**

1.    Risk of Prejudice to Plaintiff

The first Eitel factor considers whether a plaintiff will suffer prejudice if a default judgment is not entered. PepsiCo, Inc. v. California Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002); see also Eitel, 782 F.2d at 1471-72. Here, in the absence of default judgment, the SEC "would have no way to enforce the Securities Act or the Exchange Act against Defaulting Defendants." SEC v. Pedras, No. CV 13–7932 GAF (MRWx), 2014 WL 12597332, at *4 (C.D. Cal. Apr. 16, 2014); see also PepsiCo, 238 F. Supp. 2d at 1175 (finding courts favor entry of default judgment when, absent entry of default judgment, plaintiffs "will likely be without other recourse for recovery").

Accordingly, the first Eitel factor weighs in favor of entering default judgment.

2.    Sufficiency of the Complaint and the Likelihood of Success on the Merits

Courts often consider the second and third Eitel factors together. See PepsiCo, 238 F. Supp. 2d at 1175; HTS, Inc. v. Boley, 954 F. Supp. 2d 927, 941 (D. Ariz. 2013). The second and third Eitel factors assess the substantive merits of the movant's claims and the sufficiency of its pleadings, which "require that a [movant] state a claim on which [it]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:21-cv-06817-CAS-GJSx | Date | May 23, 2022 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Carl Jensen et al | | |

may recover." PepsiCo, 238 F. Supp. 2d at 1177 (quotation marks omitted); see also Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978) (stating that the issue is whether the allegations in the pleading state a claim upon which plaintiff can recover). For the purposes of default judgment, all well-pleaded allegations in the complaint, except those relating to damages, are assumed to be true. Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977). However, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992).

     Here, Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder make it unlawful, "in the offer or sale of securities" or "in connection with the purchase or sale of a security," to engage in any fraudulent conduct. In particular, to establish a violation of Section 17(a)(2) of the Securities Act, the SEC must prove, in connection with the offer or sale of a security: (1) a material false statement or omission; (2) made with at least negligence; (3) the receipt of money or property by means thereof; (4) by means of interstate commerce. See SEC v. GLT Dain Rauscher, Inc., 254 F.3d 852 at 856 (9th Cir. 2001). Likewise, to establish a violation of Section 10(b) of the Exchange Act and Rule 10b-5(b) thereunder, the SEC must show that a defendant, in connection with the purchase or sale of a security: (1) made an untrue statement or omitted to state a material fact, (2) with scienter; (3) by means of interstate commerce. See 17 C.F.R. § 240.10b-5(b); see also SEC v. Platforms Wireless, 617 F.3d 1072, 1092 (9th Cir. 2010).

     Additionally, Section 17(a)(1) of the Securities Act prohibits any person, in the offer or sale of any security, from employing any device, scheme, or artifice to defraud, and Section 17(a)(3) prohibits any person from engaging in any transaction, practice, or course of business which operates, or would operate, as a fraud or deceit upon the purchaser. 15 U.S.C. § 77q(a)(1), (3). Likewise, Section 10(b) of the Exchange Act and Rules 10b-5(a) and (c) thereunder make it unlawful for any person to employ, in connection with the purchase or sale of any security, any device, scheme or artifice to defraud, or to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person. 17 C.F.R. § 240.10b-5(a), (c).

     As described above and detailed in the SEC's complaint, the SEC's allegations are sufficient to establish that Jensen, Gold, and Margolis violated Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, did so with scienter, and did so through interstate commerce. In particular,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**       'O'

| Case No. | 2:21-cv-06817-CAS-GJSx | Date | May 23, 2022 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Carl Jensen et al | | |

Jensen directly defrauded investors in connection with the offer or sale of securities through his fraudulent scheme, Gold aided and abetted Jensen by receiving investor funds at the instruction of Jensen, and Margolis received ill-gotten funds to which he is not entitled, and is therefore subject to disgorgement as well. See SEC v. World Capital Mkt., Inc., 864 F.3d 996, 1003 (9th Cir. 2017).

Accordingly, the second and third factors weigh in favor of granting the motion for default judgment

### 3.   Sum of Money at Stake in the Action

Pursuant to the fourth Eitel factor, the Court balances "the amount of money at stake in relation to the seriousness of the [defaulting party's] conduct." PepsiCo, 238 F. Supp. 2d at 1176; see also Eitel, 782 F.2d at 1471–72. "This determination requires a comparison of the recovery sought and the nature of defendant's conduct to determine whether the remedy is appropriate." United States v. Broaster Kitchen, Inc., No. 2:14-cv-09421-MMM-PJW, 2015 WL 4545360, at *6 (C.D. Cal. May 27, 2015); see also Walters v. Statewide Concrete Barrier, Inc., No. 3:04-cv-02559-JSW, 2006 WL 2527776, *4 (N.D. Cal. Aug. 30, 2006) ("If the sum of money at issue is reasonably proportionate to the harm caused by the defendant's actions, then default judgment is warranted.").

Here, the SEC seeks an order permitting disgorgement against Jensen, Gold, and Margolis for the over $4.5 million they misappropriated from investors. See Russell Decl. ¶ 38(a). Given the seriousness of defendants' conduct, and the fact that disgorgement from a relief defendant is proper where the relief defendant (1) received ill-gotten gains; and (2) does not have a legitimate claim to those funds, World Cap. Mkt., 864 F.3d at 1004, the Court concludes that the fourth Eitel factor weighs in favor of entry of default judgment.

### 4.   Possibility of Dispute Concerning a Material Fact

The fifth Eitel factor considers the possibility that material facts are disputed. PepsiCo, 238 F. Supp. 2d at 1177; see also Eitel, 782 F.2d at 1471–72. "Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages." PepsiCo, 238 F. Supp. 2d at 1177.

Here, the SEC has "filed a well-pleaded complaint alleging the facts necessary to establish its claims, and the court clerk entered default against" defendant. Philip Morris

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:21-cv-06817-CAS-GJSx | Date | May 23, 2022 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Carl Jensen et al | | |

USA, Inc. v. Castworld Prod. Inc., 219 F.R.D. 494, 500 (C.D. Cal. 2003). Accordingly, "no dispute has been raised regarding the material averment of the complaint, and the likelihood that any genuine issue may exist is, at best, remote." Id.; see Elektra, 226 F.R.D. at 393.

Accordingly, the fifth factor weights in favor of granting the motion for default judgment.

       5.      Possibility of Excusable Neglect

The sixth Eitel factor considers whether the defendant's default may have been the product of excusable neglect. PepsiCo, 238 F. Supp. 2d at 1177; see also Eitel, 782 F.2d at 1471–72.

Here, the possibility of excusable neglect is remote. Defendants were properly served with the complaint and summons, and were provided notice of the instant motion, but have failed to appear in this action. Accordingly, the possibility of excusable neglect is remote, and this factor weighs in favor of entering default judgment.

       6.      Policy Favoring Decisions on the Merits

Under the seventh Eitel factor, the Court takes into account the strong policy favoring decisions on the merits. See Eitel, 782 F.2d at 1472. Of course, "this preference, standing alone, is not dispositive." PepsiCo, 238 F. Supp. 2d at 1177 (citation omitted). "Notwithstanding the strong policy presumption in favor of a decision on the merits, where a defendant's failure to appear and respond 'makes a decision on the merits impractical, if not impossible,' default judgment is appropriate." Constr. Laborers Tr. Funds for S. Cal. Admin. Co. v. Black Diamond Contracting Grp., Inc., No. S8:17-cv-00770-JLSDFM, 2017 WL 6496434, at *5 (C.D. Cal. Dec. 18, 2017). Since defendants' failure to appear or otherwise respond makes a decision on the merits in this case "impractical, if not impossible," id., this factor does not preclude entry of default judgment.

       7.      Conclusion Regarding the Eitel Factors

Apart from the policy favoring decisions on the merits, all the remaining Eitel factors weigh in favor of default judgment, including the merits of the government's claims. See Federal Nat. Mortg. Ass'n v. George, No. 5:14-cv-01679-VAP-SP, 2015 WL 4127958, *3 (C.D. Cal. July 7, 2015) ("The merits of the plaintiff's substantive claim and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:21-cv-06817-CAS-GJSx | Date | May 23, 2022 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Carl Jensen et al | | |

the sufficiency of the complaint are often treated by courts as the most important Eitel factors.") (citation omitted). Therefore, weighing all the Eitel factors, the Court finds that entry of default judgment against defendant is appropriate.

    **C.    Relief Sought by SEC**

"The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917–18 (9th Cir. 1987) (quotation marks omitted). The "[p]laintiff has the burden of proving damages through testimony or written affidavit." See Bd. of Trustees of the Boilermaker Vacation Tr. v. Skelly, Inc., 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005). Moreover, the movant seeking default judgment must prove the damages sought, and although the Court may hold an evidentiary hearing to determine the amount of damages, no hearing is necessary "if the amount of damages can be determined from definite figures contained in the documentary evidence or in detailed affidavits." Bravado Int'l Grp. Merch. Servs., Inc. v. Quintero, No. 2:13-cv-00693-SVW-SS, 2013 WL 12126750, at *4 (C.D. Cal. Nov. 27, 2013) (citation omitted).

    Here, the SEC seeks several forms of relief. First, the SEC seeks a judgment permanently enjoining Jensen and Gold from future violations of Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder. Mot. at 26-27. To obtain an injunction, the SEC must establish that there is a reasonable likelihood of future violations. See S.E.C. v. Murphy, 626 F.2d 633, 655 (9th Cir. 1980). "The existence of past violations may give rise to an inference that there will be future violations; . . . [i]n predicting the likelihood of future violations, a court must assess the totality of the circumstances surrounding the defendant and his violations, and it considers factors such as the degree of scienter involved; the isolated or recurrent nature of the infraction; the defendant's recognition of the wrongful nature of his conduct; the likelihood, because of defendant's professional occupation, that future violations might occur; and the sincerity of his assurances against future violations." S.E.C. v. Murphy, 626 F.2d 633, 655 (9th Cir. 1980). Here, given that Jensen and Gold's conduct was an ongoing fraud perpetuated over many years, and because their failure to appear precludes any assurances against future violations, the Court finds that an injunction is appropriate.

    Second, the SEC seeks disgorgement against Jensen, Gold, and Margolis. The SEC has authority to seek disgorgement "that does not exceed a wrongdoer's net profits

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          'O'

| Case No. | 2:21-cv-06817-CAS-GJSx | Date | May 23, 2022 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Carl Jensen et al | | |

and is awarded for victims." Liu v. SEC, 140 S. Ct. 1936, 1940 (2020). Additionally, "[d]isgorgement need be 'only a reasonable approximation of profits causally connected to the violation.'" Platforms Wireless Int'l Corp., 617 F.3d 1072, 1096 (2010) (quoting SEC v. First Pac. Bancorp, 142 F.3d 1186, 1191 (9th Cir. 1998)). Here, the SEC's calculation of the appropriate disgorgement is premised upon the evidence accumulated SEC staff accountant Russell. The Court finds that the SEC's evidence presents, at a minimum, a "reasonable approximation" of Jensen, Gold, and Margolis's fraudulent gains, and that the requested disgorgement is therefore appropriate. Additionally, the Court finds that the SEC's request the Jensen be held jointly liable with both Gold and Margolis for each of their disgorgement amounts is appropriate based on the fact that, according to the SEC's complaint, it was at Jensen's direction that money gained through defendants' fraudulent scheme was received by accounts in Gold's and Margolis's names. See Liu, 140 S. Ct. at 1949 (permitting collective liability for "partners engaged in concerted wrongdoing"); see also SEC v. Smith, No. CV 20-1056 PA (SHKx), 2020 WL 6712257, at *3 (C.D. Cal. Oct. 19, 2020) ("Defendants shall be held jointly and severally liable for disgorgement because they acted in concert to perpetrate the fraudulent scheme.").

The SEC also requests joint and several disgorgement from relief defendant Margolis because Margolis has worked with Jensen since 2001, and because "the benefits of the ill-gotten gains clearly accrued to Margolis as the millions of dollars of investor funds flowed to Margolis's bank accounts." Mot. at 26 (citing Russell Decl. ¶ 38). The Court finds joint and several disgorgement as to Margolis is appropriate based on the evidence that Margolis was "intertwined" with Jensen in perpetuating the fraudulent scheme, World Cap. Mkt., Inc., 864 F.3d at 1003-04, and that Margolis "misappropriated at least $4,080,596 of investor funds." Russell Decl. ¶ 38(a).

Additionally, the Court finds that prejudgment interest on the disgorgement amounts is appropriate "to ensure that the wrongdoer does not profit from the illegal activity." S.E.C. v. Cross Fin. Servs., Inc., 908 F. Supp. 718, 734 (C.D. Cal. 1995). Pursuant to the SEC's calculations, prejudgment interest on Jensen's total joint and several disgorgement of $4,568,893 from September 2021 through April 2022 totals $83,847.74; prejudgment interest on Gold's joint and several disgorgement with Jensen of $362,897 from September 2021 through April 2022 totals $6,659.84; and prejudgment interest on Margolis's joint and several disgorgement with Jensen of $4,080,596 from September 2021 through April 2022 totals $74,886.58. See Russell Decl. ¶ 38.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| | | | |
|---|---|---|---|
| Case No. | 2:21-cv-06817-CAS-GJSx | Date | May 23, 2022 |
| Title | Securities and Exchange Commission v. Carl Jensen et al | | |

Finally, the SEC argues that "Jensen and Gold violated the Securities Act and the Exchange Act, and so are liable for penalties under Section 20(d)(1) and Section 21(d)(3)(A) of those acts, respectively." Mot. at 32. "Like a permanent injunction, civil penalties are imposed to deter the wrongdoer from similar violations in the future; therefore the factors listed in SEC v. Murphy, [] apply." S.E.C. v. Abacus Int'l Holding Corp., No. C 99-02191, 2001 WL 940913, at *5 (N.D. Cal. Aug. 16, 2001). As the SEC correctly notes, the Murphy factors include "(i) the degree of scienter involved; (ii) the isolated or recurrent nature of the infraction; (iii) the defendant's recognition of the wrongful nature of his conduct; (iv) the likelihood, because of the defendant's professional occupation, that future violations might occur; and (v) the sincerity of his assurances against future violations." Mot. at 32 (citing Murphy, 626 F.2d at 655). The Securities Act and the Exchange Act provide that civil penalties should be assessed according to a three-tier system. See 15 U.S.C. §§ 77t(d)(2), 78u(d)(3)(B). First tier penalties may be imposed for "each violation" of either Act; second tier penalties are appropriate where the violation "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement;" third tier penalties apply where the violation "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement; and [] such violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." Id. The SEC does not specify which tier it seeks, as each tier provides for either a specific statutory amount or "the gross amount of pecuniary gain to such defendant as the result of the violation," id., and the SEC seeks the latter, i.e., "a monetary penalty equal to Jensen and Gold's disgorgement figures of $4,568,893 and $362,897 respectively." Mot. at 33. The Court finds that the SEC's requested civil penalties are appropriate, as Jensen and Gold acted with intent in defrauding investors for personal gain, and, by virtue of their failure to appear in this action, Jensen and Gold have failed to assure the Court that they will not commit any future violations.

## V. CONCLUSION

In accordance with the foregoing, the Court **GRANTS** the SEC's motion for default judgment.

The Court permanently enjoins Jensen and Gold from future violations of the antifraud provisions of Section 17(a) of the Securities Act of 1933 and Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:21-cv-06817-CAS-GJSx | Date | May 23, 2022 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Carl Jensen et al | | |

Additionally, the Court orders disgorgement with prejudgment interest against Jensen of (i) $125,400 that he directly received with prejudgment interest of $2,301.32; (ii) $362,897, jointly and severally with Gold for the amount Gold personally retained from the amounts he received from investors, with prejudgment interest of $6,659.84; and (iii) $4,080,596, jointly and severally with Margolis for the amount Margolis retained from investors, with prejudgment interest of $74,886.58, for a total of $4,568,893 in disgorgement, plus prejudgment interest of $83,846.74.

With respect to Gold, the Court orders disgorgement of $362,897 with prejudgment interest of $6,659.84, jointly and severally with Jensen.

With respect to Margolis, the Court orders disgorgement of $4,080,596 with prejudgment interest of $74,886.58, jointly and severally with Jensen.

Finally, the Court imposes a civil penalty of $4,568,983 against defendant Jensen and a civil penalty of $362,897 against defendant Gold.

IT IS SO ORDERED.

| | | 00 | : | 05 |
|---|---|---|---|---|
| | Initials of Preparer | | CMJ | |